**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **TERRY BROWN,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 12-1769** |
| ) | **Judge Nora Barry Fischer** |
| **BLASÉ TUCCI, in his individual and** ) | |
| **official capacity as Vice President of** ) | |
| **Slippery Rock Borough Council,** ) | |
| **DAVID MILLER, in his individual** ) | |
| **and official capacity as President of** ) | |
| **Slippery Rock Borough Council, and** ) | |
| **NEVA STANGER, in her individual** ) | |
| **and official capacity as solicitor for** ) | |
| **Slippery Rock Borough Council.** ) | |

## MEMORANDUM OPINION

### I.  Introduction

Pending before the Court is a motion to dismiss filed by the Defendants pursuant to

Federal Rules of Civil Procedure 12(b)(1)[1] and 12(b)(6).  Docket Nos. 14 & 17.  For the reasons

that follow, that motion will be granted in part and denied in part.  The Plaintiff will be ordered

to file a more definite statement in accordance with Federal Rule of Civil Procedure 12(e).

### II.  Background[2]

Slippery Rock Township ("Township") and Slippery Rock Borough ("Borough") are

municipal entities organized under the laws of the Commonwealth of Pennsylvania.  Docket No.

1 at ¶¶ 4-5.  The Township's territory completely surrounds that of the Borough.  *Id.* at ¶ 6.  In

---

[1] To the extent that the Defendants base their motion on the doctrine applied in *Rooker v. Fidelity Trust Co.*, 460 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), they challenge the Court's subject-matter jurisdiction to entertain this action.  *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 291-292, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005).
[2] Given the procedural posture of this case, the factual allegations contained in the complaint (*Docket No. 1*) are assumed to be true.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007).

other words, the Borough is geographically situated within the Township, and an individual traveling by foot cannot leave the Borough without entering the Township. *Id.* The Township does not have its own police force. Docket No. 17 at 2, n. 1. Pennsylvania law permits a township to contract with a municipal corporation in order to procure the services of its police force. 53 PA. STAT. 66903. For several years, the Borough's Police Department ("Department") patrolled the Township in exchange for monetary payments made pursuant to a contract known as the Slippery Rock Borough Police Services Mutual Aid Agreement ("Agreement"). Docket No. 1 at ¶ 7. Under the terms of the Agreement, the Borough was paid $25.00 for every hour of police services provided to the Township. *Id.* at ¶ 18.

Plaintiff Terry Brown ("Brown") is a resident of the Township. *Id.* at ¶ 14. He was employed as a Borough police officer for more than twenty-four years. *Id.* at ¶ 12. As an active member of the community, Brown was known and liked by many of the Township's residents. *Id.* at ¶ 15. At some point, he became the Borough's Chief of Police. *Id.* at ¶ 13.

Borough and Township officials began to renegotiate the terms of the Agreement during the latter part of 2009 or the early part of 2010. *Id.* at ¶ 8. As the Chief of Police, Brown was directly involved with the negotiations. *Id.* at ¶ 16. While the negotiations were underway, some members of the Borough Council ("Council") proposed that the Borough and the Township merge to form a single entity. *Id.* at ¶ 9. The proposal was spearheaded by David Miller ("Miller"), who served as the President of the Council, and Blasé Tucci ("Tucci"), who served as the Council's Vice-President. *Id.* at ¶ 10. With the support of many Township residents, the Township Supervisors ("Supervisors") expressed opposition to the proposed merger. *Id.* at ¶ 11.

During the spring of 2010, Brown and Tucci met with the Supervisors to discuss the status of the Agreement. *Id.* at ¶ 18. The Supervisors offered to increase the Township's hourly

payment for police protection from $25.00 to $100.00.  *Id.*  Brown supported the idea and expressed the view that such an increase would adequately compensate the Borough for its services.  *Id.* at ¶ 19.  Tucci resisted the proposal put forth by the Supervisors.  *Id.* at ¶ 20.  He stated that no new agreement would be executed, and that the Township could continue to enjoy the services of the Borough's police force only if it agreed to merge with the Borough.  *Id.*  Tucci essentially presented the Supervisors with an "all or nothing" offer.  *Id.* at ¶ 21.  Brown was "shocked" by Tucci's refusal to accept the payment increase offered by the Supervisors.  *Id.* at ¶ 22.

Shortly after the meeting, Tucci privately approached Brown and asked him to "personally endorse" the merger proposal.  *Id.* at ¶ 23.  Brown refused to support the idea.  *Id.* at ¶ 24.  He told Tucci that he would be "subject to termination" if he were to engage in "political conduct" relating to the proposed merger.  *Id.* at ¶ 25.  Brown's fear of termination was apparently rooted in 53 PA. STAT. § 46190(6), which provides that a police officer or firefighter may be "suspended without pay, removed or reduced in rank" for participating in a "political or election campaign while on duty or in uniform or while using borough property."

In May 2010, the Council sent a memorandum to the Department advising that Borough police officers should offer assistance to Township residents only when such assistance was first sought from the Pennsylvania State Police ("PSP").  *Id.* at ¶ 26.  In Brown's presence, Miller and Tucci stated that the delayed response times observed by Township residents would make them wish that they had "played ball" and agreed to the merger.  *Id.* at ¶ 32.  Brown did not understand the memorandum to require Borough police officers to await the *arrival* of a state police officer before responding to a request for help made by a Township resident.  *Id.* at ¶ 29.  After hearing about Brown's interpretation of the Council's instruction, Tucci "stormed" into Brown's office

and accused him of "playing fucking games with the memo." *Id.* at ¶ 27. Tucci told Brown that a member of the PSP needed to be "physically present" at the scene of an incident occurring within the Township before Borough police assistance could be authorized. *Id.* at ¶ 30. Brown responded by accusing the Council of "using the safety of Township residents as leverage" to garner support for its merger proposal. *Id.* at ¶ 31. He described that tactic as "a very bad way to do business." *Id.*

In September 2010, Bureau Administrator Lucinda Lipco ("Lipco") informed Brown that he needed to attend the Council's next executive session. *Id.* at ¶ 33. This was the first time that Brown was required to attend such a meeting. *Id.* at ¶ 34. At the meeting, Brown claimed that the Council was "putting a price" on the safety of Township residents by conditioning continued police protection on a merger. *Id.* at ¶ 35. He expressed disagreement with the Council's approach to the issue. *Id.* Despite his reservations about the policy reflected in the earlier memorandum, Brown stated that he would follow any "official directions" given to him by the Council. *Id.* Nonetheless, he emphasized that he could not "engage in political conduct" pertaining to the proposed merger. *Id.* at ¶ 36.

On October 7, 2010, Brown taught a class on "close-quarter shooting" at a local shooting range. *Id.* at ¶ 37. After disabling a student's weapon, Brown placed himself between the student and his or her "range target" in order to conduct a demonstration. *Id.* at ¶ 38. By going "down range," Brown apparently violated the applicable firearms safety protocol. Officer Jason Bennett ("Bennett") witnessed the incident.[3] *Id.* at ¶ 39. A few weeks later, Bennett's wife saw Tucci at a local store and told him that Brown had improperly "stepped down range during a training session." *Id.* at ¶ 40. With Miller's approval, Tucci started to investigate the incident.

---

[3] Documents submitted by the Defendants suggest that Bennett was the "student" referenced in Brown's complaint. Docket No. 14-1 at 2; Docket No. 36 at 2.

*Id.* at ¶ 41.  Neva Stanger ("Stanger"), the Borough Solicitor, was asked to participate in the investigation.  *Id.* at ¶¶ 43-45.  She spoke with Bennett about the matter on October 21, 2010.  Docket No. 14-1 at 2.

Pennsylvania law permits a borough police officer to be "suspended without pay, removed or reduced in rank" only for reasons specified by statute.  53 PA. STAT. § 46190.  A public employee "who can be discharged only for cause" has a constitutionally-protected property interest in his or her employment.  *Gilbert v. Homar*, 520 U.S. 924, 928-929, 117 S.Ct. 1807, 138 L.Ed.2d 120 (1997).  In *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 542-548, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), the United States Supreme Court held that the Due Process Clause of the Fourteenth Amendment prohibits a public employer from discharging such an employee without affording him or her a pretermination hearing.  During a hearing conducted on November 2, 2010, Brown and Stanger discussed the incident at the shooting range.  Docket No. 14-1 at 2.  Brown's attorney was present for the discussion.  *Id.*

The Council voted to terminate Brown's employment with the Department on December 7, 2010.  Docket No. 1 at ¶ 47.  Each Pennsylvania borough maintaining "a police force or paid fire apparatus operators" has a "civil service commission" consisting of "three commissioners."  53 PA. STAT. § 46172(a).  On December 17, 2010, Brown appealed his dismissal to the Slippery Rock Borough Civil Service Commission ("Commission").  Docket No. 14-1 at 3.  A hearing was conducted on May 10, 2011.[4]  Docket No. 1 at ¶ 50.  The Commission unanimously denied Brown's appeal in a decision rendered on November 29, 2011.  Docket No. 1-2 at 2-5.  It was noted that under *Jenkintown v. Civil Service Commission*, 478 A.2d 941, 943 (Pa.Commw.Ct. 1984), and *Borough of Edgeworth v. Blosser*, 672 A.2d 854, 856 (Pa.Commw.Ct. 1996), the

---
[4] Although the complaint refers only to a hearing conducted on May 10, 2011, the documentary record indicates that the Commission also heard testimony on May 11, 2011, and June 10, 2011.  Docket No. 14-1 at 3.

Commission could modify the Council's decision only if the allegations lodged against Brown were lacking in evidentiary support, or if the penalties imposed on him were otherwise prohibited by law. *Id.* at 4. The Commission clarified that the disciplinary action taken against Brown may have been less severe if it had been the body vested with the authority to discipline him in the first instance. *Id.* at 4-5; Docket No. 27-1 at 2.

On December 28, 2011, Brown appealed the Commission's decision to the Court of Common Pleas of Butler County. Docket No. 14-2 at 10; 53 PA. STAT. § 46191(c). The Commission filed its "Findings of Fact and Conclusions of Law" on January 25, 2012. *Id.* In that filing, the Commission stated that Brown's conduct had provided the Council with a sufficient basis for discharging him under subsections (2) and (4) of 53 PA. STAT. § 46190. Docket No. 14-1 at 3. Those provisions permit a borough police officer to be "removed" for the "[n]eglect or violation of any official duty," or for "[i]nefficiency, neglect, intemperance, immorality, disobedience of orders, or conduct unbecoming an officer." 53 PA. STAT. § 46190(2), (4). The Council filed a notice of intervention on January 27, 2012. Docket No. 14-2 at 10. In a memorandum opinion and order dated May 15, 2012, Judge Marilyn J. Horan affirmed the Commission's decision. Docket No. 14-1. In her opinion, Judge Horan declared that since "the Council's decision to remove Brown was supported by substantial evidence," "the Commission had no authority to modify Brown's penalty." *Id.* at 13.

Brown filed a motion for post-trial relief on May 25, 2012. Docket No. 14-2 at 11. Pennsylvania Rule of Civil Procedure 227.1(g) provides that "[a] motion for post-trial relief may not be filed in an appeal from the final adjudication or determination of a local agency or a Commonwealth agency as to which jurisdiction is vested in the courts of common pleas." PA. R. CIV. P. 227.1(g). Relying on Rule 227.1(g), Judge Horan determined that she had no jurisdiction

to entertain Brown's motion for post-trial relief. Docket No. 14-2 at 14. The earlier order affirming Brown's dismissal was deemed to be the "final appealable order" in the case. *Id.* The order dismissing Brown's motion for post-trial relief was entered on August 31, 2012. *Id.* at 15-16.

Brown commenced this action against Miller, Tucci and Stanger on December 5, 2012, alleging violations of the First and Fourteenth Amendments to the United States Constitution. Docket No. 1 at ¶¶ 53-60. The constitutional claims were premised on an assertion that the Defendants had discharged Brown in retaliation for his refusal to endorse the merger proposal and opposition to the Council's negotiating tactics. *Id.* at ¶¶ 48-49. Brown further alleged that the Defendants had violated Pennsylvania law by wrongfully discharging him because of his refusal to violate § 46190(6). *Id.* at ¶¶ 61-67. On March 4, 2013, the Defendants moved for the dismissal of Brown's claims pursuant to Rules 12(b)(1) and 12(b)(6). Docket No. 14. The parties advanced their respective positions during the course of an oral argument session conducted on April 26, 2013. The motion to dismiss filed by the Defendants is the subject of this memorandum opinion.

## III.    <u>Standards of Review</u>

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges a court's subject-matter jurisdiction over the plaintiff's claims. FED. R. CIV. P. 12(b)(1). "At issue in a Rule 12(b)(1) motion is the court's 'very power to hear the case.'" *Judkins v. HT Window Fashions Corp.*, 514 F.Supp.2d 753, 759 (W.D.Pa. 2007), quoting *Mortensen v. First Federal Savings & Loan Association*, 549 F.2d 884, 891 (3d Cir. 1977). As the party asserting that jurisdiction exists, the plaintiff bears the burden of showing that his or her claims are properly before the court. *Development Finance Corp. v. Alpha Housing & Health Care*, 54

F.3d 156, 158 (3d Cir. 1995). In reviewing a Rule 12(b)(1) motion, a court must determine whether the attack on its jurisdiction is a facial attack or a factual attack. A facial attack challenges the sufficiency of the plaintiff's pleadings on jurisdictional grounds. *Petruska v. Gannon University*, 462 F.3d 294, 302, n. 3 (3d Cir. 2006). When considering a facial attack, a court must accept the allegations contained in the plaintiff's complaint as true. *Id.* A factual attack on the court's jurisdiction must be treated differently. *Id.* When considering a factual attack, the court does not attach a presumption of truthfulness to the plaintiff's allegations, and the existence of disputed material facts does not preclude the court from deciding for itself whether jurisdiction over the plaintiff's claims can be properly exercised. *Mortensen*, 549 F.2d at 891.

In light of the United States Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), a complaint may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). This standard requires more than "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. The complaint must allege a sufficient number of facts "to raise a right to relief above the speculative level." *Id.* This requirement is designed to facilitate the notice-pleading standard of Federal Rule of Civil Procedure 8(a)(2), which requires "a short and plain statement of the claim *showing* that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2)(emphasis added).

In considering a motion to dismiss filed pursuant to Rule 12(b)(6), a court accepts all of the plaintiff's allegations as true and views all reasonable inferences drawn from those allegations in the light most favorable to the plaintiff. *Buck v. Hampton Township School District*, 452 F.3d 256, 260 (3d Cir. 2006). Nonetheless, a court need not credit bald assertions, unwarranted inferences, or legal conclusions cast in the form of factual averments. *Morse v. Lower Merion School District*, 132 F.3d 902, 906, n. 8 (3d Cir. 1997). The primary question in deciding a motion to dismiss is not whether the plaintiff will ultimately prevail, but rather whether he or she is entitled to offer evidence to establish the facts alleged in the complaint. *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir. 2000). The purpose of a motion to dismiss is to "streamline[] litigation by dispensing with needless discovery and factfinding." *Neitzke v. Williams*, 490 U.S. 319, 326-327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). In addition to the allegations contained in the complaint, a court may consider matters of public record, exhibits attached to the complaint, and other items appearing in the record of the case. *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384, n. 2 (3d Cir. 1994).

## IV.   **Jurisdiction and Venue**

Jurisdiction to adjudicate Brown's federal constitutional claims is predicated on 28 U.S.C. § 1331. The Court has supplemental jurisdiction over Brown's wrongful discharge claims pursuant to 28 U.S.C. § 1367(a). Venue is proper under 28 U.S.C. § 1391(b).

## V.   **Discussion**

Brown brings his constitutional claims pursuant to 42 U.S.C. § 1983, which provides a cause of action against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the

deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. This statutory provision does not create substantive rights. *Maher v. Gagne*, 448 U.S. 122, 129, n. 11, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980). A plaintiff cannot prevail in an action brought under § 1983 without establishing an underlying violation of a federal constitutional or statutory right. *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 119-120, 125 S.Ct. 1453, 161 L.Ed.2d 316 (2005).

The first step in the Court's analysis is to "identify the exact contours of the underlying right said to have been violated." *County of Sacramento v. Lewis*, 523 U.S. 833, 841, n. 5, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). The First Amendment to the United States Constitution provides:

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press, or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

U.S. CONST., AMEND. I. Brown's constitutional claims appear to be based on the Free Speech and Petition Clauses. Docket No. 1 at ¶¶ 53-60. Those provisions apply to the States because of their incorporation within the Due Process Clause of the Fourteenth Amendment. *Meyer v. Grant*, 486 U.S. 414, 420, 108 S.Ct. 1886, 100 L.Ed.2d 425 (1988).

In addition to his constitutional claims, Brown asserts "wrongful termination" claims against the Defendants. Docket No. 1 at ¶¶ 61-67. Pennsylvania does not recognize a generalized cause of action for wrongful or improper discharge. *Geary v. United States Steel Corp.*, 319 A.2d 174, 180 (Pa. 1974). Nevertheless, an employer may be held liable for dismissing an employee in violation of Pennsylvania's "public policy." *Donahue v. Federal Express Corp.*, 753 A.2d 238, 244 (Pa.Super.Ct. 2000). Brown maintains that the Defendants

violated Pennsylvania's "public policy" by terminating his employment with the Department because of his refusal to engage in conduct constituting a violation of § 46190(6). Docket No. 1 at ¶¶ 63-65.

The Defendants move for the dismissal of Brown's claims on several grounds. They challenge the Court's subject-matter jurisdiction to entertain this action. Docket Nos. 14 & 17 at ¶ 33. The Defendants argue that, for purposes related to employer discipline, Brown's expressive conduct did not enjoy constitutional protection. *Id.* They assert the affirmative defenses of *res judicata*, collateral estoppel, qualified immunity and high public official immunity. *Id.* The Defendants also contend that Stanger did not act "under color of" state or local law in connection with Brown's discharge, and that the constitutional claims asserted against her must be dismissed for that reason. *Id.*

Before adjudicating the claims brought by a plaintiff, a federal court must ensure that it has jurisdiction over the matter in controversy. *Great Southern Fireproof Hotel Co. v. Jones*, 177 U.S. 449, 453, 20 S.Ct. 690, 44 L.Ed. 842 (1900). In the absence of jurisdiction, the Court cannot consider the viability of Brown's claims. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 93-102, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). For this reason, the Court will address the Defendants' jurisdictional challenge before considering the other arguments raised by the parties.

A. The *Rooker-Feldman* Doctrine

Federal "district courts" have "original jurisdiction" over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Given the "original" nature of this jurisdiction, United States district courts are "precluded from exercising appellate jurisdiction over final state-court judgments." *Lance v. Dennis*, 546 U.S. 459, 463, 126 S.Ct.

1198, 163 L.Ed.2d 1059 (2006)(*per curiam*).  The Supreme Court's jurisdiction to review decisions rendered by state tribunals is governed by 28 U.S.C. § 1257, which provides:

> **§ 1257.  State courts; certiorari**
> **(a)** Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari where the validity of a treaty or statute of the United States is drawn in question or where the validity of a statute of any State is drawn in question on the ground of its being repugnant to the Constitution, treaties, or laws of the United States, or where any title, right, privilege, or immunity is specially set up or claimed under the Constitution or the treaties or statutes of, or any commission held or authority exercised under, the United States.
> **(b)** For the purposes of this section, the term "highest court of a State" includes the District of Columbia Court of Appeals.

28 U.S.C. § 1257.  In *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416, 44 S.Ct. 149, 68 L.Ed.2d 362 (1923), a statutory predecessor to § 1257(a) was construed to vest *exclusive* jurisdiction in the Supreme Court to review decisions issued by state courts, thereby precluding federal district courts from reviewing such decisions.  The rule established in *Rooker* was reaffirmed and applied in *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).  In *Feldman*, the Supreme Court declared that federal district courts did not have jurisdiction to entertain "challenges to state-court decisions in particular cases arising out of judicial proceedings."  *Feldman*, 460 U.S. at 486.

The decisions in *Rooker* and *Feldman* gave rise to the so-called "*Rooker-Feldman* doctrine."  *Lampe v. Lampe*, 665 F.3d 506, 518, n. 15 (3d Cir. 2011).  Before the Supreme Court's decision in *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 283, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005), some federal courts incorrectly understood the doctrine "to extend far beyond the contours of the *Rooker* and *Feldman* cases."  In *Exxon Mobil*, the Supreme Court narrowed the reach of the doctrine by stating as follows:

> The *Rooker-Feldman* doctrine, we hold today, is confined to cases of the kind
> from which the doctrine acquired its name: cases brought by state-court losers
> complaining of injuries *caused by state-court judgments* rendered before the
> district court proceedings commenced and inviting district court review and
> rejection of those judgments. *Rooker-Feldman* does not otherwise override or
> supplant preclusion doctrine or augment the circumscribed doctrines that allow
> federal courts to stay or dismiss proceedings in deference to state-court actions.

*Exxon Mobil*, 544 U.S. at 284 (emphasis added). The Defendants' jurisdictional challenge must be considered in relation to the guideposts enunciated in *Exxon Mobil*.

Brown's dismissal was ultimately affirmed by the Court of Common Pleas. Docket No. 14-1. Therefore, Brown is a "state-court loser" for *Rooker-Feldman* purposes. *Exxon Mobil*, 544 U.S. at 284. The order affirming his dismissal was entered before the commencement of this action. *Id.* Consequently, the jurisdictional inquiry turns on whether Brown's injuries were "caused by" the judgment entered by the Court of Common Pleas, and on whether his claims invite "review and rejection" of that judgment. *Id.*

In *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 167 (3d Cir. 2010), the United States Court of Appeals for the Third Circuit explained that the *Rooker-Feldman* doctrine raises no bar to the exercise of federal jurisdiction when a plaintiff complains of an injury "caused by the defendant's actions and not by the state-court judgment" in question. The Court of Appeals went on to observe that an injury existing "prior to the [relevant] state-court proceedings" cannot be "'caused by' those proceedings." *Great Western*, 615 F.3d at 167. The "injury" alleged by Brown dates back to December 7, 2010, when the Council voted to terminate his employment with the Department. Docket No. 1 at ¶ 47. Judge Horan's order affirming Brown's dismissal was not entered until May 15, 2012. Docket No. 41-1 at 15. Since the "injury" suffered by Brown predated the judgment entered by the Court of Common Pleas, it

was not "caused by" that judgment. *Turner v. Crawford Square Apartments III, L.P.*, 449 F.3d 542, 547 (3d Cir. 2006).

Brown's constitutional claims do not invite "review and rejection" of Judge Horan's decision. *Exxon Mobil*, 544 U.S. at 284. In affirming the Council's discharge decision, the Commission was careful to point out that it may not have terminated Brown's employment if it had been delegated the task of exercising "disciplinary responsibility" in the first instance. Docket No. 1-2 at 4-5. Judge Horan reasoned that since the Council's decision was "supported by substantial evidence," the Commission "had no authority" to modify the penalty imposed on Brown. Docket No. 14-1 at 14. The decision rendered by the Court of Common Pleas established only that Pennsylvania law *permitted* the Council to dismiss Brown for his conduct on October 7, 2010. *Id.* It did not establish that the Council was *required* to discharge Brown.

In order to establish a violation of his rights under the First and Fourteenth Amendments, Brown must demonstrate the existence of a causal relationship between his constitutionally protected expression and the Council's decision to terminate his employment. *Stephens v. Kerrigan*, 122 F.3d 171, 180 (3d Cir. 1997). The issue of causation is governed by the standard announced by the Supreme Court in *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). "Under *Doyle*, a plaintiff asserting a First Amendment retaliation claim bears the initial burden of demonstrating that his or her speech was a 'substantial' or 'motivating' factor behind the employment action at issue." *Toth v. California University of Pennsylvania*, 844 F.Supp.2d 611, 651 (W.D.Pa. 2012). When such a showing is made, the burden shifts to the defendant to prove, by a preponderance of the evidence, that the challenged employment action would have been taken even in the absence of the plaintiff's speech. *Doyle*, 429 U.S. at 287. In this context, the existence of causation need

not be premised on a finding that the decision in question was "motivated solely by a single concern." *Suppan v. Dadonna*, 203 F.3d 228, 236 (3d Cir. 2000), quoting *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 265, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977). Even if Brown's conduct provided the Council with a legitimate basis for terminating his employment under Pennsylvania law, it does not necessarily follow that his employment *would have* been terminated in the absence of his speech. *Doyle*, 429 U.S. at 286 ("A borderline or marginal candidate should not have the employment question resolved against him because of constitutionally protected conduct."). By contending that the Council *would not have* effectuated his discharge if he had refrained from engaging in constitutionally-protected conduct, Brown does not invite "review and rejection" of Judge Horan's conclusion that the Council *could have* discharged him without violating Pennsylvania law. *Exxon Mobil*, 544 U.S. at 284.

These principles apply with equal force to Brown's wrongful termination claims. Since Brown's "injury" existed before the issuance of Judge Horan's decision, it was not "caused by" that decision. *Great Western*, 615 F.3d at 167. Moreover, Brown need not impugn the judgment entered by the Court of Common Pleas in order to establish that he was discharged because of his refusal to engage in activities prohibited under § 46190(6). The instant action "encounters no *Rooker-Feldman* shoal." *Skinner v. Switzer*, 562 U.S. ___, ___, 131 S.Ct. 1289, 1297, 179 L.Ed.2d 233 (2011). The Court has subject-matter jurisdiction to entertain Brown's claims against the Defendants.

**B.     Preclusion**

The Full Faith and Credit Clause of the United States Constitution requires the courts of one State to give preclusive effect to the judgments rendered by the courts of other States. U.S.

CONST., ART. IV, § 1; *Riley v. New York Trust Co.*, 315 U.S. 343, 348-349, 62 S.Ct. 608, 86 L.Ed. 885 (1942). "A final judgment in one State, if rendered by a court with adjudicatory authority over the subject matter and persons governed by the judgment, qualifies for recognition throughout the land" and "gains nationwide force." *Baker v. General Motors Corp.*, 522 U.S. 222, 233, 118 S.Ct. 657, 139 L.Ed.2d 580 (1998). Unlike state courts, federal courts are not bound by the Full Faith and Credit Clause. *University of Tennessee v. Elliott*, 478 U.S. 788, 799, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986). When a judgment is rendered by a state court, however, federal courts are statutorily required to give it preclusive effect under 28 U.S.C. § 1738. *Edmundson v. Borough of Kennett Square*, 4 F.3d 186, 189 (3d Cir. 1993). The applicable statutory language provides that "[t]he records and judicial proceedings of any court of any . . . State, Territory or Possession . . . shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken." 28 U.S.C. § 1738. "This statute has long been understood to encompass the doctrines of *res judicata*, or 'claim preclusion,' and collateral estoppel, or 'issue preclusion.'" *San Remo Hotel, L.P. v. City & County of San Francisco*, 545 U.S. 323, 336, 125 S.Ct. 2491, 162 L.Ed.2d 315 (2005)(emphasis added). "Claim preclusion generally refers to the effect of a prior judgment in foreclosing successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit. Issue preclusion generally refers to the effect of a prior judgment in foreclosing successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, whether or not the issue arises on the same or a different claim." *New Hampshire v. Maine*, 532 U.S. 742, 748-749, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001). A State's judicial proceedings must "satisfy the minimum procedural requirements

of the Fourteenth Amendment's Due Process Clause in order to qualify for the full faith and credit guaranteed by federal law." *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 481, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982). If those requirements are satisfied, § 1738 mandates that a judgment rendered by a state court be given the same preclusive effect in a federal court that it would be accorded in another state court.[5] *Parsons Steel, Inc. v. First Alabama Bank*, 474 U.S. 518, 523, 106 S.Ct. 768, 88 L.Ed.2d 877 (1986).

Congress has the authority to carve exceptions into § 1738's legislative prescription. *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 386, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985). In enacting § 1983, however, Congress did not "repeal or restrict the traditional doctrines of preclusion" normally applicable under § 1738. *Allen v. McCurry*, 449 U.S. 90, 98, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). Consequently, the preclusive effect of the judgment entered by the Court of Common Pleas must be ascertained by reference to Pennsylvania law. *Migra v. Warren City School District Board of Education*, 465 U.S. 75, 81-87, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984).

"*Res judicata*, or claim preclusion, is a doctrine by which a former adjudication bars a later action on all or part of the claim which was the subject of the first action." *Balent v. City of Wilkes-Barre*, 669 A.2d 309, 313 (Pa. 1995)(emphasis in original). The doctrine "applies not only to claims actually litigated, but also to claims which could have been litigated during the first proceeding if they were part of the same cause of action." *Id.* In order for one adjudication to bar a subsequent action, the cases in question must involve not only the same cause of action,

---

[5] It is axiomatic that a State's freedom to create its own rules of preclusion must be exercised within the parameters established by the Due Process Clause of the Fourteenth Amendment. *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985). "A State may not grant preclusive effect in its own courts to a constitutionally infirm judgment, and other state and federal courts are not required to accord full faith and credit to such a judgment." *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 482, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982)(footnote omitted).

but also the same subject matter and parties. *Levitt v. Patrick*, 976 A.2d 581, 589-590

(Pa.Super.Ct. 2009). Furthermore, the doctrine of claim preclusion cannot be applied unless

there is an "identity of the quality or capacity of the parties suing or being sued." *In re: Iulo*, 766

A.2d 335, 337 (Pa. 2001).

Brown seeks to proceed against Miller, Tucci and Stanger in both their individual and

official capacities. Docket No. 1. A plaintiff bringing a personal-capacity claim against a

governmental official seeks to hold the official personally liable for his or her misconduct.

*Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). "An award of

damages entered against a personal-capacity defendant can be executed only against his or her

'personal assets.'" *Douglas v. Brookville Area School District*, 836 F.Supp.2d 329, 353

(W.D.Pa. 2011), quoting *Graham*, 473 U.S. at 166. A defendant sued in his or her personal

capacity "may assert personal immunity defenses such as objectively reasonable reliance on

existing law." *Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). An

official-capacity claim against a governmental official seeks to impose liability on the entity that

he or she represents. *Brandon v. Holt*, 469 U.S. 464, 471-472, 105 S.Ct. 873, 83 L.Ed.2d 878

(1985). An award of damages entered against an official-capacity defendant can be executed

only against the governmental entity of which he or she is an agent. *Douglas*, 836 F.Supp.2d at

353. A defendant sued in his or her official capacity may invoke only the immunities available

to the employing governmental entity. *Hafer*, 502 U.S. at 25. The distinction between personal-

capacity claims and official-capacity claims turns on the capacity in which a defendant has been

*sued* rather than on the capacity in which he or she has *acted*. *Burns v. Alexander*, 776

F.Supp.2d 57, 72, n. 14 (W.D.Pa. 2011). A governmental official can be held *personally* liable

under § 1983 for his or her *official* misconduct. *Hafer*, 502 U.S. at 27-31.

Brown and the Commission were the original parties to the appeal filed in the Court of Common Pleas. The Council became a party on January 27, 2012, by filing a notice of intervention. Docket No. 14-1 at 3. Miller, Tucci and Stanger were not parties to that case. Indeed, the Court of Common Pleas listed Stanger as one of the Council's two attorneys of record. *Id.* at 1. Although the Council was itself a party, the same cannot be said of its individual members. To the extent that Brown has sued Miller and Tucci in their individual capacities, their "quality or capacity" in this action differs from that in the appeal to the Court of Common Pleas. *Yamulla Trucking & Excavating Co., Inc. v. Justofin*, 771 A.2d 782, 784 (Pa.Super.Ct. 2001). Judge Horan's decision does not preclude Brown from proceeding with his personal-capacity claims in this case. *Edmundson*, 4 F.3d at 191-193. The Court does not understand the Defendants to argue otherwise. Docket No. 28 at 1.

In *Monell v. Dept. of Social Services*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court classified municipal entities as "persons" amenable to suit under § 1983. The holding in *Monell* applies with equal force to "local government officials sued in their official capacities." *Monell*, 436 U.S. at 690, n. 55. Brown's official-capacity claims against Miller, Tucci and Stanger must be regarded as claims against the Borough.[6] *McMillan v. Monroe County*, 520 U.S. 781, 785, n. 2, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997). The Defendants maintain that those claims are precluded by Judge Horan's order affirming Brown's dismissal. Docket No. 28 at 1-2. Brown argues that his official-capacity claims should not be dismissed. Docket No. 27 at 9-11. This issue is important because the Borough "may not assert the good faith of its officers or agents as a defense to liability under § 1983." *Owen v. City of Independence*, 445 U.S. 622, 638, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980). If Brown's official-

---

[6] Brown could have named the Borough as a defendant rather than naming Miller, Tucci and Stanger in their official capacities. *Kentucky v. Graham*, 473 U.S. 159, 167, n. 14, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Monell v. Dept. of Social Services*, 436 U.S. 658, 690, n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

capacity claims are not precluded, he may be able to recover damages from the Borough even if the Defendants are entitled to qualified immunity in their personal capacities. *Safford Unified School District #1 v. Redding*, 557 U.S. 364, 379, 129 S.Ct. 2633, 174 L.Ed.2d 354 (2009); *Brandon*, 469 U.S. at 472-473.

Brown and the Borough were both parties to the case adjudicated by the Court of Common Pleas. Docket No. 14-1. Like the instant action, the appeal filed in the Court of Common Pleas concerned the "subject matter" of Brown's discharge. *Gregory v. Chehi*, 843 F.2d 111, 116-117 (3d Cir. 1988). A careful examination of Pennsylvania law reveals that a court reviewing an adjudication completed by a municipal civil service commission has jurisdiction to consider "whether constitutional rights have been violated." *Day v. Civil Service Commission*, 931 A.2d 646, 650 (Pa. 2007); *Lewis v. Civil Service Commission*, 542 A.2d 519, 522 (Pa. 1988). The statute governing the disposition of an appeal from a civil service commission specifically permits a reviewing court to consider whether the commission's adjudication "is in violation of the [appellant's] constitutional rights." 2 PA. CONS. STAT. § 754(b). Although an appealing party may ordinarily raise only the issues previously raised before the relevant "local agency," a reviewing court may consider additional issues upon a showing of "due cause" for the party's failure to preserve such issues for appeal. 2 PA. CONS. STAT. § 753(a). An aggrieved party can easily surmount that hurdle in any case involving "a violation of constitutional dimensions." *Marchionni v. Southeastern Pennsylvania Transportation Authority*, 715 A.2d 559, 561 (Pa.Commw.Ct. 1998). If the record developed before the local agency is incomplete, the reviewing court has discretion to permit the

introduction of additional evidence and consider the appeal *de novo*.[7] *Powell v. Middletown Township Board of Supervisors*, 782 A.2d 617, 621 (Pa.Commw.Ct. 2001). The adequacy of the record to facilitate judicial review turns on whether the court has a sufficient basis for considering the "questions presented" on appeal. *Retirement Board of Allegheny County v. Colville*, 852 A.2d 445, 451 (Pa.Commw.Ct. 2004). Even when the court "has not taken additional evidence," it remains free to decide whether "an error of law" has been committed. *In Re: Appeal of Zimmett*, 367 A.2d 382, 383 (Pa.Commw.Ct. 1977).

When he appealed the Commission's decision to the Court of Common Pleas, Brown did not request a "fact-gathering hearing." Docket No. 14-1 at 7. Consequently, Judge Horan's review was limited to the record developed before the Commission. *Id.* at 6-7. Relying on language used by the Commonwealth Court in *Davis v. Civil Service Commission*, 820 A.2d 874, 878 (Pa.Commw.Ct. 2003), Judge Horan acknowledged in her decision that the scope of her review was broad enough to encompass potential violations of Brown's "constitutional rights." *Id.* at 6. Nothing in the record suggests that Brown would not have been able to challenge his discharge on constitutional grounds. Indeed, Brown unsuccessfully challenged the adequacy of his pretermination hearing under the Due Process Clause. *Id.* at 8-9. It is beyond dispute that the Pennsylvania courts had the competence to entertain constitutional challenges to Brown's dismissal. *Edmundson*, 4 F.3d at 190.

Relying on *Gregory v. Chehi*, 843 F.2d 111 (3d Cir. 1988), and *Edmundson v. Borough of Kennett Square*, 4 F.3d 186 (3d Cir. 1993), the Defendants maintain that Brown is precluded from proceeding with his official-capacity claims in this action. Docket No. 28 at 1-2. In those decisions, the United States Court of Appeals for the Third Circuit assumed that because a

---

[7] The statute providing for an appeal from an order entered by a municipal civil service commission specifically permits a reviewing court to "hear the appeal on the original record and additional proof or testimony as the parties concerned may desire to offer in evidence." 53 PA. STAT. § 46191(c).

discharged public employee could challenge his or her dismissal on First Amendment grounds within the context of an appeal to the Pennsylvania courts, Pennsylvania's rules of claim preclusion would bar him or her from challenging the termination decision in a subsequent official-capacity action brought under § 1983. *Gregory*, 843 F.2d at 116-121; *Edmundson*, 4 F.3d at 190-191. In *Gregory*, the Court of Appeals declared that the additional remedies available under § 1983 did not render the plaintiff's claim "a separate cause of action" from the one litigated in a Pennsylvania court. *Gregory*, 843 F.2d at 118-119. That issue was not discussed in *Edmundson*.

Since the decisions in *Gregory* and *Edmundson* were grounded in Pennsylvania law, the Court can consider whether the reasoning employed in those decisions has been undermined by subsequent decisions rendered by Pennsylvania courts. *Nationwide Insurance Co. v. Patterson*, 953 F.2d 44, 46-49 (3d Cir. 1991). In *Hopewell Estates, Inc. v. Kent*, 646 A.2d 1192, 1194-1195 (Pa.Super.Ct. 1994), the Pennsylvania Superior Court explained that a court presented with the defense of claim preclusion must consider whether the action at issue "seek[s] compensation for the same damages" sought in the earlier action. The Superior Court went on to declare that "two suits which have arisen out of the same set of factual circumstances may involve entirely separate causes of action," and that the doctrine of claim preclusion "will not bar a subsequent action where the damages for which relief was sought in the earlier action were entirely different."[8] *Hopewell Estates*, 646 A.2d at 1195. In *McNeil v. Owens-Corning Fiberglas Corp.*, 680 A.2d 1145, 1147, n. 2 (Pa. 1996), the Pennsylvania Supreme Court stated that the applicability of claim preclusion turns on whether the subsequent action involves "the same claim, demand or cause of action" as the earlier action. Applying the standard enunciated in

---

[8] Federal courts presented with questions of state law must accord substantial weight to decisions rendered by the intermediate appellate courts of the relevant State. *West v. American Telephone & Telegraph Co.*, 311 U.S. 223, 237-238, 61 S.Ct. 179, 85 L.Ed. 139 (1940).

*McNeil*, the Superior Court has considered a litigant's entitlement to relief in determining whether separate claims constitute a single "cause of action." *Stoeckinger v. Presidential Financial Corp.*, 948 A.2d 828, 832-833 (Pa.Super.Ct. 2008).

Although a plaintiff cannot overcome the defense of claim preclusion "by recasting the nomenclature for the relief requested," the precise content of his or her "demand for recovery" is a factor that the Pennsylvania courts consider in determining whether a particular claim is precluded. *Tobias v. Halifax Township*, 28 A.3d 223, 227 (Pa.Commw.Ct. 2011). Sections 25(2) and 26(1)(c) of the RESTATEMENT (SECOND) OF JUDGMENTS describe the manner in which that factor should be considered. Section 25(2) states that a plaintiff cannot overcome the defense of claim preclusion simply by "seek[ing] remedies or forms of relief not demanded in the first action." RESTATEMENT (SECOND) OF JUDGMENTS § 25(2) (1982). Section 26(1)(c) provides that a "claim" litigated in an earlier action "subsists as a possible basis for a second action by the plaintiff against the defendant . . . [if] [t]he plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy or form of relief in the first action because of the limitations on the subject matter jurisdiction of the courts or restrictions on their authority to entertain multiple theories or demands for multiple remedies or forms of relief in a single action, and the plaintiff desires in the second action to rely on that theory or to seek that remedy or form of relief." RESTATEMENT (SECOND) OF JUDGMENTS § 26(1)(c) (1982). The RESTATEMENT clearly makes a distinction between forms of relief that *were not demanded* in an earlier action and forms of relief that *could not have been demanded* in that action. The United States Court of Appeals for the Third Circuit recently recognized that § 26(1) is followed in Pennsylvania. *R&J Holding Co. v. Redevelopment Authority of the County of Montgomery*, 670 F.3d 420, 427 (3d Cir. 2011). It is doubtful that the Pennsylvania courts would find Brown's official-capacity

claims to be precluded if, during the course of his appeal, he would not have been able to seek the monetary relief available under § 1983. *Marrese*, 470 U.S. at 382 (observing that the preclusion law of most States incorporates a "requirement of prior jurisdictional competency"). The application of claim preclusion is ordinarily based on a determination that the precluded claim could have been asserted during the earlier proceeding. *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 (3d Cir. 2010).

The decision in *Gregory* appears to have been premised on a belief that the plaintiff in that case could have sought relief under § 1983 during the proceedings conducted in the Pennsylvania courts if he had elected to do so. *Gregory*, 843 F.2d at 119, n. 5. Federal and state courts enjoy concurrent jurisdiction over actions arising under § 1983. *Haywood v. Drown*, 556 U.S. 729, 734-736, 129 S.Ct. 2108, 173 L.Ed.2d 920 (2009). As a general matter, the Pennsylvania courts have the competence to entertain such actions. *Wagner v. Waitlevertch*, 774 A.2d 1247, 1251-1255 (Pa.Super.Ct. 2001). It does not follow, however, that *every* Pennsylvania court *always* has jurisdiction to adjudicate a § 1983 claim, regardless of the procedural posture of the case in question. *Boettger v. Miklich*, 481 A.2d 972, 973-974 (Pa.Commw.Ct. 1984). A claim can only be precluded by a prior judgment rendered by a "court of competent jurisdiction." *R/S Financial Corp. v. Kovalchick*, 716 A.2d 1228, 1230 (Pa. 1998), quoting *Balent*, 669 A.2d at 313. In this case, the relevant question is whether the Court of Common Pleas could have entertained Brown's § 1983 claims within the context of his appeal from the Commission's decision. *McNasby v. Crown Cork & Seal Co., Inc.*, 888 F.2d 270, 277-279 (3d Cir. 1989).

The doctrine of claim preclusion "prohibits parties involved in prior, concluded litigation from subsequently asserting claims in a *later action* that were raised, or could have been raised,

24

in the previous adjudication." *Wilkes v. Phoenix Home Life Insurance Co.*, 902 A.2d 366, 376 (Pa. 2006)(emphasis added). The application of the doctrine presupposes that two different "actions" are involved. Under Pennsylvania law, a "statutory appeal" does not constitute a "civil action" governed by the Pennsylvania Rules of Civil Procedure. *Airo Die Casting, Inc. v. Westmoreland County Board of Assessment Appeals*, 706 A.2d 1279, 1282 (Pa.Commw.Ct. 1998). It is treated as a "part of the administrative agency process" rather than as a "lawsuit." *Evangel Baptist Church v. Mifflin County Board of Assessment Appeals*, 815 A.2d 1174, 1179 (Pa.Commw.Ct. 2003). A reviewing court is constrained by statutory standards of review. 2 PA. CONS. STAT. §§ 753-754. Even if a constitutional violation is established, the court can only reverse or modify the decision under review, or remand the case for further consideration by the local agency. *Ssen, Inc. v. Borough Council of the Borough of Eddystone*, 810 A.2d 200, 206-207 (Pa.Commw.Ct. 2002); *Springfield School District v. Shellem*, 328 A.2d 535, 538 (Pa.Commw.Ct. 1974). A court entertaining a statutory appeal has no authority to "award damages." *Human Development of Erie, Inc. v. Zoning Hearing Board of Millcreek Township*, 600 A.2d 658, 682-683 (Pa.Commw.Ct. 1991).

If Brown had succeeded in challenging his discharge before the Commission or the Court of Common Pleas, he would have been entitled to reinstatement and back pay. 53 PA. STAT. § 46191(b)-(c). The monetary damages available under § 1983 include compensation for injuries extending beyond out-of-pocket losses or expenses. *Wilson v. Garcia*, 471 U.S. 261, 276-280, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985); *Carey v. Piphus*, 435 U.S. 247, 263-265, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). Brown seeks to recover compensatory and punitive damages in this action. Docket No. 1 at ¶ 60. His official-capacity claims cannot result in an award of punitive damages under § 1983, since the Borough enjoys immunity from such damages. *City of Newport*

*v. Fact Concerts, Inc.*, 453 U.S. 247, 271, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981). Nonetheless, § 1983 provides plaintiffs in Brown's position with a basis for obtaining compensation for injuries attributable to a municipal entity's misconduct. *Owen*, 445 U.S. at 657. "Compensation for damages upon discharge from employment is not limited to back pay." *Laskaris v. Thornburgh*, 733 F.2d 260, 264 (3d Cir. 1984).

A party who successfully vindicates a right enforceable under § 1983 may seek an award of counsel fees. *North Carolina Dept. of Transportation v. Crest Street Community Council, Inc.*, 479 U.S. 6, 12, 107 S.Ct. 336, 93 L.Ed.2d 188 (1986). Brown requests such an award in this case. Docket No. 1 at ¶ 67. In *Gregory*, the Court of Appeals assumed that the plaintiff in that case could have sought an award of counsel fees if he had prevailed in his statutory appeal on constitutional grounds. *Gregory*, 843 F.2d at 119, n. 5. In two subsequent decisions, however, the Commonwealth Court has held that the counsel fees available to prevailing § 1983 plaintiffs in "lawsuits" are not available to parties who prevail in statutory appeals. *Evangel Baptist Church*, 815 A.2d at 1178-1179; *Human Development of Erie, Inc.*, 600 A.2d at 682-683. Consequently, it appears that the Court of Common Pleas, when sitting as an *appellate* court in Brown's case, lacked jurisdiction to order relief extending beyond the reinstatement and back pay provided for by statute.[9] 53 PA. STAT. § 46191(b)-(c).

Because Brown's statutory appeal to the Court of Common Pleas constituted a "part of the administrative agency process," it cannot be regarded as a "lawsuit" in which his § 1983 claims could have been asserted. *Evangel Baptist Church*, 815 A.2d at 1179. The Defendants point to nothing which suggests that Brown could have brought § 1983 claims against the Borough in his *appeal* to the Court of Common Pleas. *McNasby*, 888 F.2d at 277 (holding that a

---

[9] Pennsylvania's rule limiting statutory appeals to discrete issues and forms of relief constitutes a "neutral rule of judicial administration" rather than an unconstitutional attempt to "nullify a federal right or cause of action." *Haywood v. Drown*, 556 U.S. 729, 736, 129 S.Ct. 2108, 173 L.Ed.2d 920 (2009).

claim was not precluded under circumstances in which the plaintiff had previously "proceeded only in adjudicative bodies of limited original jurisdiction"). Since there was a "jurisdictional obstacle" to the maintenance of a § 1983 *action* in the earlier case, Brown is not precluded from proceeding with his official-capacity claims in this case.[10] *Briar Meadows Development, Inc. v. South Centre Township Board of Supervisors*, Civil Action No. 10-1012, 2010 WL 4024775, at *7, 2010 U.S. Dist. LEXIS 108995, at *21-22 (M.D.Pa. Oct. 13, 2010).

A party attempting to invoke the defense of issue preclusion must establish that the relevant factual or legal issue was "actually litigated and determined by a valid and final judgment." *County of Berks ex rel. Baldwin v. Pennsylvania Labor Relations Board*, 678 A.2d 355, 359 (Pa. 1996). It is undisputed that the legality of Brown's dismissal under the First and Fourteenth Amendments was never litigated in the Pennsylvania courts. If Brown had unsuccessfully litigated the constitutionality of his discharge in his appeal to the Court of Common Pleas, he would have most likely been precluded from proceeding with his § 1983 claims against the Defendants in both their official and personal capacities. *Matternas v. Stehman*, 642 A.2d 255, 266 (Pa.Super.Ct. 1994)("Collateral estoppel does not require identity of causes of action or parties."). Since that issue was never litigated, however, Brown is not

---

[10] There is no question that Brown would be precluded from proceeding with his official-capacity claims in this action if they could have been asserted in his appeal to the Court of Common Pleas. *Gregory v. Chehi*, 843 F.2d 111, 119, n. 5 (3d Cir. 1988). Since the Court of Common Pleas could not have entertained § 1983 claims *on appeal* from the Commission's decision, this case is controlled by *McNasby v. Crown Cork & Seal Co., Inc.*, 888 F.2d 270, 277-279 (3d Cir. 1989). The Court acknowledges that tension exists between that decision and the reasoning employed in *Edmundson v. Borough of Kennett Square*, 4 F.3d 186, 188-191 (3d Cir. 1993). To the extent that a conflict exists between those two precedents, *McNasby* is the one that governs. *United States v. Monaco*, 23 F.3d 793, 803 (3d Cir. 1994). In any event, the application of claim preclusion to bar the official-capacity claims asserted in *Edmundson* appears to be in conflict with § 26(1)(c) of the RESTATEMENT (SECOND) OF JUDGMENTS, which is followed by the Pennsylvania courts. *R&J Holding Co. v. Redevelopment Authority of the County of Montgomery*, 670 F.3d 420, 427 (3d Cir. 2011). There is a difference between raising a "First Amendment defense" on appeal and bringing a First Amendment *claim* under § 1983. *Edmundson*, 4 F.3d at 191; *McNasby*, 888 F.2d at 278. Given that the Court of Common Pleas could not have entertained § 1983 claims *on appeal*, Brown is not precluded from proceeding with his official-capacity claims in this action. *Briar Meadows Development, Inc. v. South Centre Township Board of Supervisors*, Civil Action No. 10-1012, 2010 WL 4024775, at *7, 2010 U.S. Dist. LEXIS 108995, at *21-22 (M.D.Pa. Oct. 13, 2010).

precluded from asserting that Miller, Tucci and Stanger terminated his employment in retaliation for his expressive conduct. *Swineford v. Snyder County Pennsylvania*, 15 F.3d 1258, 1268-1269 (3d Cir. 1994).

### C.    The Status of Brown's Speech

For much of this nation's history, the prevailing view was that the Constitution did not provide a public employee with a basis for objecting to the terms or conditions of his or her employment, even where such terms or conditions restricted the exercise of constitutional rights. *Adler v. Board of Education*, 342 U.S. 485, 492, 72 S.Ct. 380, 96 L.Ed. 517 (1952). In more recent times, however, the United States Supreme Court has maintained that "a State cannot condition public employment on a basis that infringes [an] employee's constitutionally protected interest in freedom of expression." *Connick v. Myers*, 461 U.S. 138, 142, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). The test used to determine whether a public employer has contravened this principle was announced in *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), in which the Supreme Court explained:

> "The theory that public employment which may be denied altogether may be subject to any conditions, regardless of how unreasonable, has been uniformly rejected." *Keyishian v. Board of Regents*, [385 U.S. 589, 605-606, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967)]. At the same time it cannot be gainsaid that the State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general. The problem in any case is to arrive at a balance between the interests of the teacher, *as a citizen*, in commenting upon *matters of public concern* and the interest of the State, *as an employer*, in promoting the efficiency of the public services it performs through its employees.

*Pickering*, 391 U.S. at 568 (emphasis added). This language in *Pickering* describes the analysis that must be undertaken in determining whether the First Amendment prohibits a public employer from discharging or disciplining an employee in response to his or her speech.

"Decisions rendered subsequent to *Pickering* illustrate that the precise language used in that decision must be taken seriously." *Mitchell v. Miller*, 884 F.Supp.2d 334, 356 (W.D.Pa. 2012). For expression to enjoy the particular form of constitutional protection provided under *Pickering*, it must come from a public employee who is speaking "as a citizen." *Id.* In *Garcetti v. Ceballos*, 547 U.S. 410, 421, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006), the Supreme Court held that public employees "are not speaking as citizens for First Amendment purposes" when they "make statements pursuant to their official duties." The rule established in *Garcetti* reflects a public employer's prerogative to control "what the employer itself has commissioned or created." *Garcetti*, 547 U.S. at 422. In *Connick v. Myers*, 461 U.S. 138, 147, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), the Supreme Court held that the Free Speech Clause does not prevent a public employer from taking disciplinary action against an employee who speaks about matters of only "personal interest." The decision in *Connick* gives effect to the language in *Pickering* referring to a public employee's interest in "commenting upon matters of public concern." *Pickering*, 391 U.S. at 568.

Where a public employee speaks "as a citizen" about "matters of public concern" and is disciplined in response to that speech, "the possibility of a First Amendment claim arises." *Garcetti*, 547 U.S. at 418. In that situation, the legality of the disciplinary action typically turns on "whether the relevant government entity ha[s] an adequate justification for treating the employee differently from any other member of the general public," whether the employee's speech "has some potential to affect the entity's operations," and whether the restrictions on speech imposed by the entity are necessary to its efficient and effective operation. *Id.* at 418-419. Consideration must also be given to whether the speech "impairs discipline by superiors or harmony among co-workers," "has a detrimental impact on close working relationships for

which personal loyalty and confidence are necessary," "impedes the performance of the speaker's duties," or "interferes with the regular operation of the enterprise." *Rankin v. McPherson*, 483 U.S. 378, 388, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987). Where a public employee speaks pursuant to his or her official duties rather than "as a citizen," the First Amendment "does not insulate [his or her] communications from employer discipline." *Garcetti*, 547 U.S. at 421. Similarly, where a public employee's speech does not involve matters of public concern, the Constitution does not prevent his or her employer from taking disciplinary action in response to that speech. *City of San Diego v. Roe*, 543 U.S. 77, 82-83, 125 S.Ct. 521, 160 L.Ed.2d 410 (2004)(explaining that "a public employee's speech must touch on a matter of 'public concern'" in order to "merit *Pickering* balancing").

The Petition Clause, which is "cut from the same cloth" as the Free Speech Clause, provides individuals with "a particular freedom of expression." *McDonald v. Smith*, 472 U.S. 479, 482, 105 S.Ct. 2787, 86 L.Ed.2d 384 (1985). "Whereas the Free Speech Clause protects the right to 'wide-open' debate, the Petition Clause encompasses only activity directed to a government audience." *Foraker v. Chaffinch*, 501 F.3d 231, 237 (3d Cir. 2007). In *Borough of Duryea v. Guarnieri*, 564 U.S. ___, ___, 131 S.Ct. 2488, 2500, 180 L.Ed.2d 408 (2011), the Supreme Court extended the *Pickering* framework to claims brought by public employees under the Petition Clause. Although the rule established in *Connick* was the primary focus of the Supreme Court's analysis, the holding in *Guarnieri* similarly embraces the rule established in *Garcetti*. *Guarnieri*, 131 S.Ct. at 2501 ("The right of a public employee under the Petition Clause is a right to participate *as a citizen*, through petitioning activity, in the democratic process.")(emphasis added).

A governmental entity operating under constitutional constraints "has significantly greater leeway in its dealings with citizen employees than it does when it brings its sovereign power to bear on citizens at large." *Engquist v. Oregon Dept. of Agriculture*, 553 U.S. 591, 599, 128 S.Ct. 2146, 170 L.Ed.2d 975 (2008). The Supreme Court's decisions applying *Pickering* and its progeny recognize that "[t]he government's interest in achieving its goals as effectively and efficiently as possible is elevated from a relatively subordinate interest when it acts as sovereign to a significant one when it acts as employer." *Waters v. Churchill*, 511 U.S. 661, 675, 114 S.Ct. 1878, 128 L.Ed.2d 686 (1994)(plurality opinion). That is because the government "gains additional authority to regulate speech" when it "acts in a capacity that goes beyond merely being sovereign." *In re Kendall*, 712 F.3d 814, ___, 2013 U.S. App. LEXIS 6682, at *30 (3d Cir. 2013). In order to enjoy such latitude, however, a government must truly act "as an employer." *Pickering*, 391 U.S. at 568. In *Connick*, the Supreme Court remarked that "an employee's false criticism of his employer on grounds not of public concern may be cause for his discharge but would be entitled to the same protection in a libel action accorded an identical statement made by a man on the street." *Connick*, 461 U.S. at 147. "This observation in *Connick* reflects the fact that statements made by a public employee pursuant to his or her official duties, or regarding matters of purely personal interest, may be characterized as 'unprotected' only 'in the sense that *employment-related sanctions* may be imposed on the basis of such statements.'" *Mitchell*, 884 F.Supp.2d at 357 (emphasis in original), quoting *Bose Corp. v. Consumer's Union of United States, Inc.*, 466 U.S. 485, 504, n. 22, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984)(emphasis added). When the government invokes its sovereign power to subject an employee to sanctions extending beyond mere termination or suspension, it operates under the same constitutional constraints that apply when it seeks to impose sovereign punishment on a

member of the general public.[11] *Eichenlaub v. Township of Indiana*, 385 F.3d 274, 283-284 (3d Cir. 2004); *Azzaro v. County of Allegheny*, 110 F.3d 968, 976, n. 3 (3d Cir. 1997). The government is not entitled to the deference available under *Pickering* simply because its authority is exercised against an individual who happens to be one of its employees. *Republican Party of Minnesota v. White*, 536 U.S. 765, 796, 122 S.Ct. 2528, 153 L.Ed.2d 694 (2002)(Kennedy, J., concurring).

The constitutional claims asserted by Brown fit squarely within the *Pickering* framework. Brown alleges that the Defendants discharged him in retaliation for his expressive conduct. Docket No. 1 at ¶¶ 53-60. He avers that he spoke "as a citizen" about matters of interest to the public. *Id.* at ¶¶ 55-56. Since his speech was directed at members of the Council, it implicated the Petition Clause as well as the Free Speech Clause. *Foraker*, 501 F.3d at 237. Furthermore, Brown does not allege that he was subjected to sanctions extending beyond the termination of his employment. Docket No. 1 at ¶¶ 58-59. Therefore, the matter must be considered under the *Pickering* standard rather than under the standards triggered by the invocation of the government's sovereign authority.[12] *Connick*, 461 U.S. at 147.

The Defendants contend that Brown's First Amendment claims must be dismissed pursuant to the rule announced in *Garcetti*. Docket No. 15 at 11-17. For purposes of the instant motion, the Court assumes that Brown's statements related to matters of public concern, and that his interest in speaking outweighed "the countervailing interest of the government in the

---

[11] "There are many forms of expression that could justify a public employee's termination or suspension even though they would not provide a lawful basis for subjecting the employee to sanctions extending beyond the employment relationship (*e.g.*, criminal punishment, civil liability, or the revocation of a professional license necessary to enable the employee to pursue a particular calling or seek employment with other entities)." *Mitchell v. Miller*, 884 F.Supp.2d 334, 357 (W.D.Pa. 2012).
[12] The test established by *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), remains applicable even if Brown's claims are deemed to be partially based on his alleged refusal to support a political faction led by Miller and Tucci. *Curinga v. City of Clairton*, 357 F.3d 305, 309-314 (3d Cir. 2004); *Schlarp v. Dern*, 610 F.Supp.2d 450, 467 (W.D.Pa. 2009).

effective and efficient management of its internal affairs." *Guarnieri*, 131 S.Ct. at 2500. The only issue for consideration is whether Brown spoke "as a citizen," or whether he spoke pursuant to his official duties. *Garcetti*, 547 U.S. at 421; *Pickering*, 391 U.S. at 568; *Borden v. School District of the Township of East Brunswick*, 523 F.3d 153, 171, n. 13 (3d Cir. 2008). Brown's claims are premised on his refusal to endorse the merger proposal, his statements to Tucci concerning the interpretation of the memorandum, and his remarks at the Council meeting. Docket No. 1 at ¶¶ 23-36. Each instance of expressive conduct will be considered separately.

"[T]he question of whether a particular incident of speech is made within a particular plaintiff's job duties is a mixed question of fact and law." *Foraker*, 501 F.3d at 240. "[W]hile it is the function of the jury to determine the presence or absence of factual circumstances surrounding the speech at issue, it is the role of the Court to determine whether, given the presence or absence of such factual circumstances, the speech enjoys constitutional protection from employer discipline." *Baranowski v. Waters*, Civil Action No. 05-1379, 2008 WL 4000406, at *19, 2008 U.S. Dist. LEXIS 64802, at *61 (W.D.Pa. Aug. 25, 2008)(emphasis deleted). The inquiry required under *Garcetti* is a "practical one" that does not turn on a given employee's formal job description. *Garcetti*, 547 U.S. at 424-425. Factors relevant to the analysis include the employee's duties, the impetus for his or her speech, the setting and subject matter of that speech, and the identities of the individuals to whom that speech is addressed. *Weisbarth v. Geauga Park District*, 499 F.3d 538, 546 (6th Cir. 2007). Consideration may also be given to "whether the speech was made inside or outside of the workplace and whether it concerned the subject matter of the speaker's employment." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 540-541 (6th Cir. 2012)(hyphen omitted).

The first instance of expressive conduct allegedly engaged in by Brown was his refusal to "personally endorse the merger proposal." Docket No. 1 at ¶¶ 23-24. According to the complaint, Tucci asked Brown "to gather Township support for the merger" shortly after their unsuccessful meeting with the Supervisors. *Id.* at ¶¶ 18-23. Brown allegedly refused to provide such an endorsement because he believed that such "political conduct" would constitute a ground for removal under § 46190(6). *Id.* at ¶¶ 23-25.

The freedom protected by the First Amendment "includes both the right to speak freely and the right to refrain from speaking at all." *Wooley v. Maynard*, 430 U.S. 705, 714, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977). The principle that one's *refusal* to support a particular ideology enjoys First Amendment protection has been described by the Supreme Court as a "fixed star in our constitutional constellation." *West Virginia Board of Education v. Barnette*, 319 U.S. 624, 642, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943). Brown's *silence* clearly constituted "speech" within the meaning of the First Amendment. *Schlarp v. Dern*, 610 F.Supp.2d 450, 468-469 (W.D.Pa. 2009).

It appears that the merger allegedly championed by Miller and Tucci could have been accomplished only by "initiative and referendum."[13] PA. CONST., ART. IX, § 8; *Middle Paxton Township v. Borough of Dauphin*, 326 A.2d 342, 343-344 (Pa. 1974); *In re: Petition of Viola*, 838 A.2d 21, 23, n. 2 (Pa.Commw.Ct. 2003); *Moon Township v. Findley Township*, 553 A.2d 500, 505 (Pa.Commw.Ct. 1989). One's refusal to support an idea that could only be enacted by the people at large would not normally be characterized as speech (or silence) pursuant to his or her official duties. Legislative enactments encroaching on the First Amendment rights of government employees have sometimes been justified by the need to prevent public employers

---

[13] Although the manner in which a merger could have been implemented is not discussed by the parties in detail, the Defendants appear to concede that a referendum would have been necessary to effectuate the proposal favored by Miller and Tucci. Docket No. 28 at 3, n. 2.

from coercing their employees to engage in off-duty political activities.  *United States v. National Treasury Employees Union*, 513 U.S. 454, 471, 115 S.Ct. 1003, 130 L.Ed.2d 964 (1995); *United States Civil Service Commission v. National Association of Letter Carriers*, 413 U.S. 548, 566-567, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973).  These factors weigh heavily against a determination that Brown's refusal to endorse the merger proposal constituted a refusal to do his job.

In this case, however, there is a factor weighing in the opposite direction.  Brown alleges that he would have been subject to discharge under § 46190(6) if he had agreed to provide the requested endorsement.  Docket No. 1 at ¶ 25.  That statutory provision provides that a borough police officer may be "removed" for participating in a "political or election campaign *while on duty or in uniform or while using borough property*."  53 PA. STAT. § 46190(6)(emphasis added).  The potential application of § 46190(6) provides the basis for Brown's wrongful termination claims.  Docket No. 1 at ¶¶ 61-67.  The averments relating to that statute suggest that Tucci was asking Brown to garner support for the merger proposal *while on duty*.  Tucci's request was apparently made shortly after he and Brown had met with the Supervisors to discuss the possibility of a merger in lieu of a new policing agreement.  *Id.* at ¶¶ 16-25.  If Brown was merely being asked to support the Council's position during the course of negotiations being conducted with the Supervisors, he was arguably acting pursuant to his official duties when he declined to do so.  *Brady v. County of Suffolk*, 657 F.Supp.2d 331, 341-354 (E.D.N.Y. 2009).

The factors weighing against Brown's position are not dispositive of the issue.  Expressive conduct occurring while a public employee is on duty does not necessarily constitute expressive conduct engaged in pursuant to his or her official duties.  *Garcetti*, 547 U.S. at 420-421.  A public employee can speak "as a citizen" inside of his or her workplace.  *Rankin*, 483

U.S. at 379-382. At this stage, the allegations contained in the complaint must be read in the light most favorable to Brown. *Hill v. Borough of Kutztown*, 455 F.3d 225, 242 (3d Cir. 2006)(construing vaguely worded pleadings to allege that a plaintiff had spoken "as a citizen" rather than "pursuant to his official duties"). When viewed in that light, the complaint suggests that Brown acted in his capacity "as a citizen" when he declined to "personally endorse the merger proposal." Docket No. 1 at ¶¶ 23-25.

The second incident relied upon by Brown involved discussions relating to the memorandum sent to him by the Council. *Id.* at ¶¶ 26-32. The memorandum instructed the Department not to respond to calls from Township residents who had not contacted the PSP. *Id.* at ¶ 26. Brown construed the memorandum to mean that Borough police officers could provide assistance to Township residents who had already *contacted* the PSP, regardless of whether a state police officer had already *arrived* at the scene. *Id.* at ¶ 29. After learning of that understanding, Tucci allegedly "stormed" into Brown's office and accused him of "playing fucking games with the memo." *Id.* at ¶ 27. During his encounter with Tucci, Brown was told to await the *arrival* of a state police officer before sending Borough police officers into the Township. *Id.* at ¶¶ 28, 30. Brown responded to Tucci's comments by describing the Council's policy as "a very bad way to do business." *Id.* at ¶ 31.

In the complaint, the statement made to Tucci is characterized as an expression of Brown's "personal belief." *Id.* at ¶ 31. That characterization amounts to nothing more than a "legal conclusion" that need not be credited. *Iqbal*, 556 U.S. at 678. "[I]f an employee engages in speech during the course of performing an official duty and the speech reasonably contributes to or facilitates the employee's performance of the official duty, the speech is made pursuant to the employee's official duties." *Brammer-Hoelter v. Twin Peaks Charter Academy*, 492 F.3d

1192, 1203 (10th Cir. 2007). The United States Court of Appeals for the Third Circuit has declared that "complaints up the chain of command about issues related to an employee's workplace duties" constitute speech made pursuant to his or her official duties.[14] *Morris v. Philadelphia Housing Authority*, 487 Fed.Appx. 37, 39 (3d Cir. 2012)(unpublished). Brown's discussion with Tucci related exclusively to the manner in which the Council's instructions were being implemented. Docket No. 1 at ¶¶ 26-32. "[A] public employee can sometimes speak pursuant to his or her official duties by volunteering unsolicited comments or criticisms." *Baranowski v. Waters*, Civil Action No. 05-1379, 2008 WL 728366, at *21, 2008 U.S. Dist. LEXIS 21301, at *68 (W.D.Pa. Mar. 18, 2008), partially vacated on other grounds by *Baranowski*, 2008 WL 4000406, at *23, 2008 U.S. Dist. LEXIS 64802, at *72. Expression does not have to fall within a public employee's job description or respond to an employer's inquiry in order to constitute speech made pursuant to the speaker's official duties. *Weintraub v. Board of Education*, 593 F.3d 196, 203 (2d Cir. 2010). When Brown expressed his misgivings about the Council's policy, he was speaking "in h[is] capacity as a public employee contributing to the formation and execution of official policy." *Mills v. City of Evansville*, 452 F.3d 646, 648 (7th Cir. 2006). The Constitution "does not invest [public employees] with a right to perform their jobs however they see fit." *Garcetti*, 547 U.S. at 422. Brown's First Amendment retaliation claims must fail to the extent that they are premised on his conversation with Tucci. *Id.* at 424.

Brown attempts to base his constitutional claims on statements made by him during the Council's "executive session." Docket No. 1 at ¶¶ 33-36. Lipco allegedly told Brown that he "needed" to attend the session. *Id.* at ¶ 33. Characterizing the session as a "meeting," Brown avers that his attendance was "required." *Id.* at ¶ 34. Although Brown informed the Council that

---

[14] It is worth noting that Brown's remarks were addressed solely to Tucci, and not to anyone outside of the relevant "chain of command." *Griffin v. City of New York*, 880 F.Supp.2d 384, 399 (E.D.N.Y. 2012).

he would "follow any official directions" relating to his responsibilities, he expressed

disagreement with the Council's decision to deny police protection to Township residents in

order to advance the merger proposal championed by Miller and Tucci. *Id.* at ¶ 35. In addition,

Brown stated that he would be subject to termination if he were to engage in "political conduct"

pertaining to the proposal. *Id.* at ¶ 36.

A borough council qualifies as an "agency" governed by Pennsylvania's Sunshine Act

[65 PA. CONS. STAT. § 701 *et seq.*]. *Smith v. Township of Richmond*, 54 A.3d 404, 409

(Pa.Commw.Ct. 2012); 65 PA. CONS. STAT. § 703. That statute generally requires covered

agencies to take official actions and conduct deliberations during the course of meetings that are

"open to the public." 65 PA. CONS. STAT. § 704. Under certain circumstances, however, an

agency is permitted to hold an "executive session." 65 PA. CONS. STAT. §§ 707(a), 708(a). The

term "executive session" is defined as "[a] meeting from which the public is excluded." 65 PA.

CONS. STAT. § 703. The statutory definition is qualified by language providing that a covered

agency "may admit those persons necessary to carry out the purpose of the meeting." *Id.*

"The [Supreme] Court has acknowledged the importance of promoting the public's

interest in receiving the well-informed views of government employee's engaging in civic

discussion." *Garcetti*, 547 U.S. at 419. For this reason, the question as to whether a government

employee speaks pursuant to his or her official duties generally turns on whether his or her

expression is analogous to speech uttered by ordinary citizens. *Reilly v. City of Atlantic City*,

532 F.3d 216, 225-232 (3d Cir. 2008). Members of the general public are "excluded" from a

borough council's "executive session." 65 PA. CONS. STAT. § 703. Furthermore, speech that is

*required* of a public employee cannot enjoy constitutional protection under *Pickering* and

*Garcetti*. *Williams v. Dallas Independent School District*, 480 F.3d 689, 693 (5th Cir. 2007).

According to Brown, he was "required" to attend the meeting.[15]  Docket No. 1 at ¶ 34.  It is also worth noting that his statements appear to have been addressed to the Council rather than to the public at large, and that they directly pertained to his responsibilities as the Chief of Police. *Davis v. McKinney*, 518 F.3d 304, 313 (5th Cir. 2008)(observing that "when a public employee raises complaints or concerns up the chain of command at his workplace about his job duties, that speech is undertaken in the course of performing his job").  These factors weigh heavily against a determination that Brown addressed the Council "as a citizen."  *Handy-Clay*, 695 F.3d at 540 (remarking that the "content and context" of a public employee's speech must be considered in determining whether the statements in question constitute a part of his or her "professional duties").

Although Brown characterizes his "meeting" with the Council as an "executive session," he refers to it as a "Borough Council meeting" in a later portion of his complaint.  Docket No. 1 at ¶¶ 33, 56.  It is not clear whether the "meeting" was attended by "citizens" other than Brown. Moreover, the complaint does not explain the degree to which Lipco exercised supervisory authority over Brown, or the extent to which she was able to "require" his attendance.  *Id.* at ¶¶ 33-34.  At this stage, any ambiguities contained in the pleadings must be construed in the light most favorable to Brown.  *Hill*, 455 F.3d at 242-243.  As explained earlier, Brown's refusal to "personally endorse" the merger proposal arguably constituted conduct in his capacity "as a citizen."  Docket No. 1 at ¶¶ 23-25.  This refusal was apparently reiterated to the Council during the "executive session."  *Id.* at ¶ 36.  When viewed in the light most favorable to Brown, the complaint "state[s] a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.

---

[15] Brown asserts that this was the "first time" that he had been "required to attend such a meeting."  Docket No. 1 at ¶ 34.  The fact that his attendance had not *previously* been "required" does not mean that it was not a part of his "official duties."  *Vose v. Kliment*, 506 F.3d 565, 572 (7th Cir. 2007).  Expressive activities can be "official" for constitutional purposes even if they do not fall within a public employee's "everyday job functions."  *Battle v. Board of Regents*, 468 F.3d 755, 761, n. 6 (11th Cir. 2006).

Brown may proceed with his First Amendment claims to the extent that they are premised on the first and third instances of expressive conduct alleged in the complaint.  Docket No. 1 at ¶¶ 23-25, 33-36.

### D.  Stanger's Status as a State Actor

Since the provisions of the First Amendment apply to the States only by virtue of the Fourteenth Amendment's Due Process Clause, Brown's constitutional claims arise under the Fourteenth Amendment.  *De Jonge v. Oregon*, 299 U.S. 353, 364-366, 57 S.Ct. 255, 81 L.Ed. 278 (1937).  "That Amendment erects no shield against merely private conduct, however discriminatory or wrongful."  *Shelley v. Kraemer*, 334 U.S. 1, 13, 68 S.Ct. 836, 92 L.Ed. 1161 (1948).  The Due Process Clause provides that "[n]o *State* shall . . . deprive any person of life, liberty, or property, without due process of law."  U.S. CONST., AMEND. § XIV, § 1 (emphasis added).  This constitutional provision "is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security."  *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 195, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989).  Actions taken by local governmental entities and officials constitute "state action" for purposes of the Fourteenth Amendment.  *Board of Trustees v. Garrett*, 531 U.S. 356, 368-369, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001).

A plaintiff proceeding under § 1983 must demonstrate that the defendant's actions were taken "under color of" the law of a given jurisdiction.  *Rendell-Baker v. Kohn*, 457 U.S. 830, 835, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982).  State action sufficient to implicate the guarantees of the Fourteenth Amendment is likewise sufficient to satisfy § 1983's requirement of action taken "under color of" state or local law.  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 928-929, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982).  The Defendants move for the dismissal of the

constitutional claims asserted against Stanger, contending that she did not act "under color of" Pennsylvania law in connection with Brown's removal.  Docket No. 15 at 18-21.

An attorney representing a client does not become a state actor merely because he or she acts as an "officer of the court."  *Henderson v. Fisher*, 631 F.2d 1115, 1119 (3d Cir. 1980); *Williams v. Dark*, 844 F.Supp. 210, 213 (E.D.Pa. 1993).  The question of whether actions taken by an attorney employed by a governmental entity constitute "state action" turns on "the nature and extent of the function" that he or she performs.  *Georgia v. McCollum*, 505 U.S. 42, 54, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992).  Although a public defender is an employee of the government, his or her primary responsibility "is to represent individual citizens in controversy with the State."  *Branti v. Finkel*, 445 U.S. 507, 519, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980).  Since his or her role is not materially different from that of a private defense attorney, the Supreme Court declared in *Polk County v. Dodson*, 454 U.S. 312, 325, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981), that "a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding."

The Defendants posit that an attorney who acts within the bounds of a traditional attorney/client relationship cannot qualify as a state actor for purposes of the Fourteenth Amendment and § 1983.  Docket No. 15 at 18-21; Docket No. 28 at 4-5; Docket No. 35 at 3-5. By advancing that position, they take the analysis utilized in *Dodson* outside of its proper context.  The holding in that case was premised on the reality that an attorney chosen to represent a private client does not act as "the government's speaker" in a court of law.  *Legal Services Corp. v. Velazquez*, 531 U.S. 533, 542, 121 S.Ct. 1043, 149 L.Ed.2d 63 (2001).  Even where a private litigant is represented by an attorney employed by the government, the attorney's actions and representations are attributed to his or her client rather than to the employing governmental

entity.[16]  *Vermont v. Brillon*, 556 U.S. 81, 90-94, 129 S.Ct. 1283, 173 L.Ed.2d 231 (2009).  The rule established in *Dodson* was "compelled by the character of the office performed by defense counsel."  *Briscoe v. Lahue*, 460 U.S. 325, 329, n. 6, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983).  It reflected the fact that "a state-compensated public defender acts in a *private capacity* when he or she represents a private client in a conflict *against* the State."  *National Collegiate Athletic Association v. Tarkanian*, 488 U.S. 179, 196, 109 S.Ct. 454, 102 L.Ed.2d 469 (1988)(emphasis added).  Although a public defender is a state employee, the adversarial relationship between his or her client and the government operates as a "countervailing reason against attributing [the employee's] activity to the government."  *Brentwood Academy v. Tennessee Secondary School Athletic Association*, 531 U.S. 288, 295-296, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001).  *Dodson* did not establish a broader rule precluding a finding of "state action" whenever a state attorney acts within traditional professional boundaries.  *McCollum*, 505 U.S. at 54-55.  Since "[t]he selection of jurors represents a unique governmental function delegated to private litigants by the government and attributable to the government for purposes of invoking constitutional protections," even a *private* attorney engages in "state action" when he or she participates in *voir dire* proceedings.  *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 627, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991).

Under Pennsylvania law, the "legal matters" of a borough must be "under the control of the borough solicitor," who "serves at the pleasure of [the borough] council."  53 PA. STAT. § 46116.  The duties of a borough solicitor are prescribed by statute.  53 PA. STAT. § 46117(a).  Those duties include the preparation of "contracts" entered into by the borough, the prosecution and defense of actions to which the borough is a party, the furnishing of opinions on questions of

---

[16] Like anyone else, an attorney representing a private litigant acts "under color of" state law if he or she conspires with state officials to effectuate a violation of the litigant's constitutional rights.  *Tower v. Glover*, 467 U.S. 914, 919-920, 104 S.Ct. 2820, 81 L.Ed.2d 758 (1984).

law submitted by borough officials, and the performance of "other professional act[s] incident to the office which the borough solicitor may be authorized or required to do by the council or the mayor" of the borough. 53 PA. STAT. § 46117(a)(1)-(4). Although the allegations in the complaint relating to Stanger are somewhat vague, they suggest that she engaged in conduct pursuant to her official duties as the Borough Solicitor. Docket No. 1 at ¶¶ 43-47. The Defendants acknowledge that Stanger acted as the Borough's "agent" in relation to Brown's discharge. Docket No. 15 at 20.

In support of their motion to dismiss, the Defendants have submitted a copy of a letter from Stanger to Miller dated November 10, 2010. Docket No. 36. In her letter, Stanger described her November 2, 2010, meeting with Brown as a "standard *Loudermill* hearing" conducted for the purpose of giving him an opportunity to respond to the allegations against him. *Id.* at 1. She concluded the letter by informing Miller that she had found the accusations against Brown to be "true and accurate." *Id.* at 7.

The Defendants maintain that Stanger's "participation" in the "*Loudermill* hearing" did not render her a "state actor" for constitutional purposes. Docket No. 35 at 3. The "hearing" to which they refer was *required* under the Due Process Clause. *Loudermill*, 470 U.S. at 542-548. As far as the Court can tell, Stanger conducted the hearing herself. Docket No. 36 at 1. Since the Borough was *constitutionally obligated* to provide Brown with a pretermination hearing, the governing precedents suggest that Stanger acted under color of Pennsylvania law when she fulfilled that obligation on the Borough's behalf. *American Manufacturers Mutual Insurance Co. v. Sullivan*, 526 U.S. 40, 55, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999). Her conduct was not removed from the purview of the Fourteenth Amendment and § 1983 simply because she acted "in accordance with professional discretion and judgment." *West v. Atkins*, 487 U.S. 42, 52, 108

S.Ct. 2250, 101 L.Ed.2d 40 (1988).  This remains true even if she did not work *exclusively* for the Borough.  *Id.* at 56.

The arguments relating to Stanger's status provide no basis for dismissing the constitutional claims asserted against her.  Docket No. 15 at 18-21; Docket No. 28 at 4-5; Docket No. 35 at 3-5.  No opinion is expressed as to whether the allegations contained in Brown's complaint are sufficient to establish that Stanger violated his constitutional rights.  Docket No. 1 at ¶¶ 43-47.  The Court holds only that Stanger's conduct in relation to Brown was "fairly attributable to the State," regardless of whether it was legal.[17]  *West*, 487 U.S. at 54.

### E.    Qualified Immunity

The Supreme Court has declared that "§ 1983 is to be read in harmony with general principles of tort immunities rather than in derogation of them."  *Imbler v. Pachtman*, 424 U.S. 409, 418, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976).  Legislators sued under § 1983 enjoy absolute immunity from liability attributed to their legislative activities.  *Lake County Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 402-406, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979); *Tenney v. Brandhove*, 341 U.S. 367, 376-379, 71 S.Ct. 783, 95 L.Ed. 1019 (1951).  This immunity extends to local legislators serving on a borough council.  *Bogan v. Scott-Harris*, 523 U.S. 44, 49, 118 S.Ct. 966, 140 L.Ed.2d 79 (1998).  Courts have developed a functional approach to absolute immunity by immunizing legislators from suits arising out of their legislative activities while permitting them to be held liable for conduct that is administrative in nature.  *Fowler-Nash v. Democratic Caucus of the House of Representatives*, 469 F.3d 328, 337-340 (3d Cir. 2006).  "Although the creation or elimination of a position is generally viewed as a

---

[17] In *Filarsky v. Delia*, 566 U.S. ___, ___, 132 S.Ct. 1657, 1665-1668, 182 L.Ed.2d 662 (2012), the Supreme Court held that a private attorney retained by a local government to interview an allegedly ill firefighter could invoke the defense of qualified immunity to contest a claim brought under § 1983.  The attorney's status as a state actor was implicitly acknowledged.  *Filarsky*, 132 S.Ct. at 1661.

legislative action, a personnel decision involving only a single employee (such as a decision to hire, fire, promote or not promote an individual) is properly classified as an administrative action that is not shielded by absolute immunity." *Schlarp*, 610 F.Supp.2d at 457. The instant case involves only the Council's decision to terminate Brown's employment with the Department. Docket No. 1 at ¶ 47. Since the Council did not create or eliminate a position, Miller and Tucci are not entitled to absolute immunity. *Fowler-Nash*, 469 F.3d at 340. *Zdziebloski v. Town of East Greenbush*, 336 F.Supp.2d 194, 202-204 (N.D.N.Y. 2004). The Court does not understand them to argue otherwise.

"[T]he 'qualified immunity' that was available to executive officials at common law may be invoked by executive officials sued under § 1983." *Ickes v. Borough of Bedford*, 807 F.Supp.2d 306, 317 (W.D.Pa. 2011). State officials performing discretionary duties are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). A federal right is "clearly established" for purposes of qualified immunity if its contours are "sufficiently clear that a reasonable official would understand that what he [or she] is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Qualified immunity is not merely a defense to liability, but also "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). In order to effectuate that entitlement, the Supreme Court has "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991)(*per curiam*). A state actor sued under § 1983 may invoke the defense of qualified immunity even if he or she does not work

for the government on a permanent or full-time basis.  *Filarsky v. Delia*, 566 U.S. ___, ___, 132 S.Ct. 1657, 1665-1668, 182 L.Ed.2d 662 (2012).

The Defendants contend that they are entitled to qualified immunity at this stage.  Docket No. 15 at 23-25; Docket No. 28 at 5.  They maintain that Brown's personal-capacity claims should be dismissed even if the complaint properly alleges a violation of his constitutional rights.[18]  *Id.*  Brown responds to that argument by asserting that his right to be free from retaliatory discharge has been clearly established for many years.  Docket No. 27 at 15; Docket No. 32 at 7.  He makes no attempt to refute the Defendants' position in relation to the precise circumstances of this case.

The Supreme Court has "repeatedly" instructed courts "not to define clearly established law at a high level of generality."  *Ashcroft v. al-Kidd*, 563 U.S. ___, ___, 131 S.Ct. 2074, 2084, 179 L.Ed.2d 1149 (2011).  The inquiry as to whether a defendant is entitled to qualified immunity "must be undertaken in light of the specific context of the case."  *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).  In *Reichle v. Howards*, 566 U.S. ___, ___, 132 S.Ct. 2088, 2093-2094, 182 L.Ed.2d 985 (2012), the Supreme Court specifically rejected the idea that a plaintiff could overcome the defense of qualified immunity by relying on a generalized right to be free from retaliation for expressive activities protected by the First Amendment.  The inquiry relating to qualified immunity in this case must account for the question of whether the expressive activities engaged in by Brown "clearly" enjoyed

---

[18] If a personal-capacity defendant is clearly entitled to qualified immunity, a court may dismiss the claim asserted against him or her without determining whether a constitutional or statutory violation has been properly alleged.  *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).  Since Brown's personal-capacity claims are accompanied by official-capacity claims, the sufficiency of Brown's allegations must be considered in any event.  *Carswell v. Borough of Homestead*, 381 F.3d 235, 244 (3d Cir. 2004).  A municipal entity "may not assert the good faith of its officers or agents as a defense to liability under § 1983."  *Owen v. City of Independence*, 445 U.S. 622, 638, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980).  Since the Borough cannot assert the defense of qualified immunity, Brown's official-capacity claims are not subject to that defense.  *Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991).

constitutional protection under *Pickering* and *Garcetti*. *Crawford-El v. Britton*, 523 U.S. 574, 592-593, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998).

At this stage, the ambiguous portions of Brown's complaint must be construed in his favor. *Hill*, 455 F.3d at 242-243. Given the vagueness of his allegations, however, the Defendants "cannot reasonably be expected to frame a proper, fact-specific qualified immunity defense." *Thomas v. Independence Township*, 463 F.3d 285, 301 (3d Cir. 2006). In order to preserve the right of the Defendants (in their personal capacities) to have their defense considered at the pleadings stage, the Court will order Brown to file a more definite statement pursuant to Federal Rule of Civil Procedure 12(e). *Id.* at 301-302.

Brown alleges that Tucci approached him "[s]hortly" after their meeting with the Supervisors and asked him to "personally endorse" the merger proposal. Docket No. 1 at ¶ 23. It is not clear whether Tucci's request was made in the immediate aftermath of the meeting (*e.g.*, as Tucci and Brown were leaving the meeting), or whether some time elapsed between the two encounters. The difference between those two scenarios may have some bearing on whether the request pertained only to Brown's posture during official negotiations, or whether it constituted a solicitation for campaign-related work designed to begin an initiative process. In September 2010, Lipco allegedly informed Brown that he "needed" to attend the Council's next "executive session." *Id.* at ¶ 33. The complaint does not explain the extent to which Lipco exercised supervisory authority over Brown, or whether she was directed to contact Brown by individuals in possession of such authority. Although the Sunshine Act defines the term "executive session" as "[a] meeting from which the public is excluded," it permits a borough council to "admit those persons necessary to carry out the purpose of the meeting." 65 PA. CONS. STAT. § 703. Brown does not explain whether he was the only person asked to address the Council on that occasion,

or whether members of the general public were invited to attend (or speak) as well. These factors are relevant to the "context" of Brown's speech. *Handy-Clay*, 695 F.3d at 540. The more definite statement should also describe the process through which Brown was terminated, the number of votes needed to effectuate his discharge, the manner in which Miller and Tucci allegedly influenced the votes cast by other Council members, and the role played by Stanger in procuring the outcome sought by Brown's opponents.

As discussed earlier, § 46190(6) prohibited Brown from engaging in certain political activities "*while on duty* or in uniform or while using borough property." 53 PA. STAT. § 46190(6)(emphasis added). Brown maintains that he was asked to engage in conduct that, at least in his view, would have contravened that prohibition. Docket No. 1 at ¶¶ 25, 36, 64. The matter was apparently discussed at the "executive session," when Council members other than Miller and Tucci were present. *Id.* at ¶ 36. To the extent possible, the more definite statement should clarify exactly what Brown was asked to do. *Crawford-El*, 523 U.S. at 599-600. Although his reference to the statute indicates that he viewed the requested tasks to be "political" in nature, his invocation of the prohibition also suggests that he was asked to perform certain functions "while on duty or in uniform," or while utilizing the property of the Borough. 53 PA. STAT. § 46190(6). The Defendants assert that Brown was merely asked to pursue "a municipal policy objective within the scope of his official duties." Docket No. 15 at 24. The dispositive question is whether the speech requested of Brown "owe[d] its existence to [his] professional responsibilities." *Garcetti*, 547 U.S. at 421. While the averments contained in the complaint (when viewed in the light most favorable to Brown) may reasonably be understood to answer that question in the negative, they are not specific enough to facilitate the resolution of issues pertaining to qualified immunity. *Thomas*, 463 F.3d at 293-294, 300-302.

The Defendants' motion to dismiss will be denied with respect to Brown's constitutional claims. Docket Nos. 14 & 17. After Brown's more definite statement is filed, the Defendants can decide whether they want to file a new motion to dismiss or answer the amended complaint. If necessary, the Court can order Brown to reply to any answer filed by the Defendants. FED. R. CIV. P. 7(a)(7). As the case progresses, the parties should keep in mind that Brown's official-capacity claims are not subject to the defense of qualified immunity. *Graham*, 473 U.S. at 166-167; *Owen*, 445 U.S. at 638. The Court will confer with the parties and manage the discovery process in order to facilitate the "prompt and efficient resolution" of this lawsuit. *Crawford-El*, 523 U.S. at 599. In the meantime, all discovery in this case will be stayed. *Thomas*, 463 F.3d at 302.

### F.    The Wrongful Termination Claims

An employer's prerogative to discharge an employee may be restrained by statute or contract. *Brueffett v. Warner Communications, Inc.*, 692 F.2d 910, 916-917 (3d Cir. 1982). In the absence of statutory or contractual protection, Pennsylvania law presumes that employees working for their employers are "at-will" employees. *Falls v. State Farm Insurance Mutual Automobile Insurance Co.*, 774 F.Supp.2d 705, 710 (M.D.Pa. 2011). "An at-will employee is defined as one whose employment is not governed by a written contract for a specific term and who is terminable at the will of either the employer or the employee." *McNichols v. Commonwealth of Pennsylvania, Dept. of Transportation*, 804 A.2d 1264, 1267 (Pa.Commw.Ct. 2002). An employer's decision to terminate an at-will employee need not be supported by "just cause." *DiBonaventura v. Consolidated Rail Corp.*, 539 A.2d 865, 867 (Pa.Super.Ct. 1988). Such an employee may ordinarily be discharged "for any or no reason." *Geary*, 319 A.2d at 175.

Although a discharged at-will employee usually has no cause of action against his or her employer for wrongful termination, the Pennsylvania Supreme Court has recognized such a cause of action in cases involving violations of Pennsylvania's "public policy." *Shick v. Shirey*, 716 A.2d 1231, 1237-1238 (Pa. 1998). The cause of action exists only where the public policy of Pennsylvania "is implicated, undermined, or violated because of the employer's termination of the employee." *McLaughlin v. Gastrointestinal Specialists, Inc.*, 750 A.2d 283, 289 (Pa. 2000). Brown asserts wrongful termination claims against the Defendants in both their individual and official capacities. Docket No. 1 at ¶¶ 61-67. He alleges that they wrongfully terminated his employment with the Department because of his refusal to engaged in conduct prohibited under § 46190(6). *Id.* at ¶¶ 64-65.

The Defendants move for the dismissal of the personal-capacity wrongful termination claims on the ground that they are entitled to the absolute immunity extended to "high public officials" under Pennsylvania law.[19] Docket No. 15 at 21-23. The defense invoked by the Defendants permits a "high public official" to escape liability when he or she engages in official action designed to further interests of importance to society. *Montgomery v. Philadelphia*, 140 A.2d 100, 102 (Pa. 1958). Although the doctrine was first articulated "in the context of defamation suits based on statements from officials in the course of their official duties and within the scope of their authority," it was later applied in "retaliatory discharge" cases. *Zugarek v. Southern Tioga School District*, 214 F.Supp.2d 468, 479 (M.D.Pa. 2002). "[B]ecause the duties conferred upon borough council members necessitate the exercise of both legislative and policy-making powers, persons in that position have the status of high public officials entitled to raise the defense of absolute privilege from suit." *Osiris Enterprises v. Borough of Whitehall*,

---

[19] Brown's constitutional claims are not subject to immunity defenses existing under Pennsylvania law. *Howlett v. Rose*, 496 U.S. 356, 376-383, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990).

877 A.2d 560, 567 (Pa.Commw.Ct. 2005). Although the status of a borough solicitor is less clear, it appears that he or she may also be entitled to absolute immunity for his or her official conduct.[20] *Alston v. PW-Philadelphia Weekly*, 980 A.2d 215, 218 (Pa.Commw.Ct. 2009).

In an attempt to circumvent the defense of absolute immunity, Brown contends that Tucci's alleged solicitation of support for the proposed merger did not constitute "official" conduct. Docket No. 27 at 15-16. That argument is unavailing. Since Brown is asserting claims for wrongful *termination*, the relevant conduct of the Defendants centers on the discharge decision rather than on the earlier solicitation. Docket No. 1 at ¶¶ 61-67. Miller and Tucci were unquestionably acting pursuant to their official duties when they voted to terminate Brown's employment. *Heller v. Fulare*, 454 F.3d 174, 178-180 (3d Cir. 2006); *McKibben v. Schmotzer*, 700 A.2d 484, 490-491 (Pa.Super.Ct. 1997). They enjoy immunity from suit under Pennsylvania law even if their actions were taken on the basis of improper motives. *Lindner v. Mollan*, 677 A.2d 1194, 1195 (Pa. 1996).

In their briefs, the Defendants do not specifically address the wrongful termination claims asserted against them in their official capacities. They discuss the defense of claim preclusion only in relation to Brown's First Amendment claims. Docket No. 15 at 9-11; Docket No. 28 at 1-2. They make no attempt to explain whether Stanger is entitled to "qualified" immunity under Pennsylvania law in the event that she is not deemed to be a "high public official." *Lindner*, 677 A.2d at 1198. In any event, however, Brown's wrongful termination claims are not cognizable and will be dismissed.

"[T]he wrongful discharge action in Pennsylvania was judicially created to protect otherwise unprotected employees from indiscriminate discharge and to provide unorganized

---

[20] It is ironic that the Defendants argue that Stanger is a "high public official" under Pennsylvania law for purposes of absolute immunity even though they maintain that she is not a state actor for purposes of the Fourteenth Amendment and § 1983. Docket No. 15 at 18-23.

workers [with] legal redress against improper actions by their employers." *Phillips v. Babcock & Wilcox*, 503 A.2d 36, 38 (Pa.Super.Ct. 1986).  A plaintiff may assert "a cause of action for wrongful discharge [only] in the absence of a statutory [or contract-based] remedy." *Macken v. Lord Corporation*, 585 A.2d 1106, 1108 (Pa.Super.Ct. 1991).  In other words, only an *at-will* employee may bring a common-law claim for wrongful termination.  *Cairns v. Southeastern Pennsylvania Transportation Authority*, 538 A.2d 659, 660-661 (Pa.Commw.Ct. 1988).  An employee enjoying statutory protection from wrongful discharge "may not appeal to the common law as an additional means of policy implementation." *Kinnally v. Bell of Pennsylvania*, 748 F.Supp. 1136, 1146 (E.D.Pa. 1990).  An individual whose employment is governed by a contractual provision cannot circumvent the terms of that provision by asserting a common-law claim.  *Griffin v. Municipality of Kingston*, 453 Fed.Appx. 250, 254 (3d Cir. 2011)(unpublished); *Modaffare v. Owens-Brockway Glass Container, Inc.*, 643 F.Supp.2d 697, 703-704 (E.D.Pa. 2009).

Brown was not an at-will employee of the Department.  He was subject to removal only for reasons specified by law.  53 PA. STAT. § 46190.  After his discharge, Brown was able to invoke statutory remedies that were not available to at-will employees.  53 PA. STAT. § 46191; *Lynn v. Smith*, 566 A.2d 360, 362 (Pa.Commw.Ct. 1989).  Since Brown enjoyed "statutory protection against termination without just cause," he has no available remedy under the common law of Pennsylvania.  *McAlee v. Independence Blue Cross*, 798 F.Supp.2d 601, 605-606 (E.D.Pa. 2011).  The Defendants' motion to dismiss will be granted with respect to Brown's wrongful termination claims.  Docket Nos. 14 & 17.  The Court will dismiss the wrongful termination claims asserted against the Defendants in both their personal and official capacities.  Docket No. 1 at ¶¶ 61-67.

## VI.   Conclusion

For the foregoing reasons, the motion to dismiss filed by the Defendants (*Docket Nos. 14 & 17*) will be denied with respect to Brown's constitutional claims and granted with respect to his wrongful termination claims.  In accordance with Rule 12(e), Brown will have fourteen days to file a more definite statement.  FED. R. CIV. P. 12(e).  Discovery in this case will be stayed until further notice is given.  *Thomas*, 463 F.3d at 302.  After the more definite statement is filed, the Defendants can decide whether to file a new motion to dismiss or answer the amended complaint.  As noted earlier, the Defendants can seek an order requiring Brown to reply to their answer if they choose not to file a second motion to dismiss.  FED. R. CIV. P. 7(a)(7).  An appropriate order follows.

s/Nora Barry Fischer
Nora Barry Fischer
United States District Judge

Dated:  May 20, 2013

cc/ecf:  All counsel of record